2022 IL App (1st) 201008-U

No. 1-20-1008

Filed September 1, 2022

Fourth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Respondent-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 05 CR 22429 |
| PATRICIA BUCHANAN, | ) ) | Honorable Angela Munari Petrone, |
| Petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Motion for leave to file successive postconviction petition affirmed where petitioner failed to demonstrate the required cause to permit such filing.

¶ 2    Patricia Buchanan appeals from the circuit court's denial of her motion for leave to file a

successive postconviction petition. We affirm.[1]

¶ 3                          I. BACKGROUND

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 4    Following a bench trial, Buchanan was convicted of first degree murder for fatally shooting Marsha Rae Willis in the parking lot of a currency exchange on September 1, 2005. Willis was romantically involved with Buchanan's husband, Gregory Banks, with whom Buchanan was in the process of obtaining a divorce. A few weeks prior to the shooting, Willis telephoned Buchanan, telling her Banks was at Willis's home and that Buchanan should "come get [her] husband." Buchanan considered the call harassing.

¶ 5    On September 1, Buchanan drove with her daughter, Kechell White, to the currency exchange. Noticing Willis in the parking lot, Buchanan approached and confronted Willis about the earlier telephone call. A heated argument ensued between the two. Buchanan followed Willis as Willis entered her vehicle and began to reverse from her parking space. Buchanan produced a revolver from her purse and tapped it against Willis's window a couple times. Then, Buchanan fired a shot, killing Willis. Buchanan "froze" for a moment, then ran into a nearby hospital where she was apprehended.

¶ 6    Several eyewitnesses testified consistently that Buchanan had been yelling, banged on Willis's window with a handgun, and fired the shot that killed Willis. Buchanan testified that Banks gave her the revolver after they experienced a home invasion earlier in the year and instructed her to always keep it for protection. She insisted, however, that she did not consciously squeeze the trigger when she shot Willis. Rather, she claimed that she was unaware of how to use a firearm and only realized it had fired when she heard a pop.

¶ 7    Buchanan's counsel argued that this was a case of involuntary manslaughter as Buchanan did not intend to kill Willis, but instead acted recklessly. In rejecting that argument, the trial court found that Buchanan's testimony that she did not intend to shoot Willis was not credible. The court

noted that Buchanan held a loaded revolver with her finger on the trigger, pointing it in Willis's direction when it fired. Accordingly, the court found her guilty of first degree murder.

¶ 8        At sentencing, Buchanan's counsel stated that she was remorseful and emphasized that she had not planned to kill Willis but had instead exercised poor judgment. Counsel further noted that, apart from minor offenses decades before, Buchanan had no criminal history and had spent her adult life working and raising her children. Counsel acknowledged that the minimum sentence was 45 years but "wished" he could point the court to authority that would allow him to deviate from that sentence. In allocution, Buchanan expressed her remorse, stating that she wished she could go back to the moment of the shooting to act differently.

¶ 9        The trial court sentenced Buchanan to the minimum term of 20 years, plus a mandatory enhancement of 25 years for personally discharging a firearm causing death.

¶ 10        On direct appeal, Buchanan argued that the State failed to prove she intended to kill Willis and that her conviction should be reduced to involuntary manslaughter, as she acted recklessly. This court found the evidence sufficient to prove that she acted intentionally and affirmed the conviction. *People v. Buchanan*, No. 1-07-2548 (2009) (unpublished order pursuant to Supreme Court Rule 23).

¶ 11        Buchanan filed an initial *pro se* postconviction petition in 2010, alleging that a witness testified differently at trial than they did before the grand jury and raising various claims of ineffective assistance of trial counsel. The trial court summarily dismissed the petition by written order. This court affirmed upon appointed counsel's motion to withdraw, accompanied by a brief, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that the appeal lacked arguable merit.

¶ 12 In 2013, Buchanan submitted a second *pro se* petition asserting the same claims as her initial petition. The trial court denied her leave to file the petition, reasoning that the issues were barred by *res judicata*.

¶ 13 In 2018, Buchanan filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). The petition asserted that Buchanan may have received a lesser sentence if certain mitigating evidence had been presented at her sentencing hearing. This included that (1) she acted recklessly rather than "maliciously," (2) she acted under strong provocation that Willis would return to hurt her, (3) her husband was verbally, emotionally, and physically abusive, and (4) she had been the victim of armed robberies. Buchanan added that she is remorseful, and she suffers from health issues related to blood pressure.

¶ 14 The circuit court dismissed the section 2-1401 petition, by written order, on the State's motion to dismiss. The court found that the petition was not barred by the two-year limitations period due to a recent statutory amendment providing for such petitions based on mitigating evidence of domestic abuse not presented at a defendant's sentencing hearing.[2] See 735 ILCS 5/2-1401(b-5) (West 2018); Pub. Act 99-384, § 10 (eff. Jan. 1, 2016) (amending 735 ILCS 5/2-1401). Nevertheless, the court found Buchanan's petition was conclusory—unsupported by specific allegations of fact. The court further reasoned that such evidence would not have likely resulted in a lesser sentence since Buchanan received the minimum term.

¶ 15 Following the circuit court's denial of her section 2-1401 petition, Buchanan filed the instant motion requesting that the court reconsider and, at the same time, recharacterize her petition as a motion for leave to file a successive postconviction petition. She attached to her motion a

---

[2]Subsequent decisions of the appellate court have found that such petitions are subject to the two-year limitation, even for defendants sentenced more than two years before the amendment. *People v. Bowers*, 2021 IL App (4th) 200509, ¶ 37; *People v. Abusharif*, 2021 IL App (2d) 191031, ¶ 16.

photocopy of Public Act 99-384. Buchanan also attached her own affidavit stating that she had been the victim of domestic violence perpetrated by her husband, Banks. She recounted an incident in which Banks slapped her with such force that she fell over a dresser and onto the floor. Buchanan also attested that she and her children were bound and gagged during a home invasion. That incident led Banks to give her a firearm for protection. Buchanan went on to recount the shooting. She attests that she only intended to ask Willis to stop telephoning her house and retrieved the handgun upon feeling threatened when Willis said she would be " 'right back.' " Buchanan states she was attempting to deter Willis when "the gun went off." Additionally, Buchanan attached a second affidavit listing three individuals whom she believed could testify to "the nature and the extent of the domestic violence perpetrated against her."

¶ 16    In a written ruling, the circuit court indicated that it recharacterized Buchanan's section 2-1401 petition as a motion for leave to file a successive postconviction petition, in accord with her motion to reconsider, and included the new attachments in its review. The court found that Buchanan had shown cause for failing to include her claim in earlier petitions "because legislation regarding domestic violence consideration in sentencing had not been enacted at the time those petitions were filed." The court found that Buchanan failed to show resulting prejudice, however, since she received the minimum sentence, and, the court reasoned, she could not have received a lesser sentence on account of mitigating factors, including her domestic abuse. The court further noted that Buchanan's affidavit essentially repeated her trial testimony that she did not intend to kill Willis. Additionally, the court observed that Buchanan failed to explain why she could not attach affidavits from the individuals she listed as witnesses, nor did she indicate specific facts they could testify to. Ultimately, the court concluded that Buchanan had not made the requisite showing and denied her leave to file a successive postconviction petition. Buchanan filed a late

notice of appeal. By supervisory order, our supreme court directed us to treat the notice of appeal as a properly perfected appeal from the circuit court's order denying Buchanan's motion for leave to file a successive postconviction petition. *Buchanan v. Reyes*, No. 127783 (Ill. Nov. 2, 2021) (supervisory order).

¶ 17                                   II. ANALYSIS

¶ 18          The Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) enables those under criminal sentence to collaterally challenge their conviction or sentence based on a substantial denial of their rights afforded by the United States or Illinois constitutions. *People v. Davis*, 2014 IL 115595, ¶ 13. The Act contemplates only one postconviction proceeding. *Id*. ¶ 14. A petitioner seeking to file a successive petition must first obtain leave of court. *People v. Edwards*, 2012 IL 111711, ¶ 24. A court must grant leave to file a successive petition when a petitioner demonstrates " 'cause and prejudice' " for failure to raise their claim earlier. *Davis*, 2014 IL 115595, ¶ 14. " 'Cause' " is an objective factor, external to the defense, that impeded the ability to raise the claim in an earlier proceeding. *Id.* " 'Prejudice' " means that the claimed constitutional error "so infected the entire trial that the resulting conviction or sentence violates due process." *Id*. A petitioner must satisfy both prongs to file a successive petition. *Id*. Our review of a circuit court's denial of a motion for leave to file a successive postconviction petition is *de novo*. *People v. Jackson*, 2021 IL 124818, ¶ 27.

¶ 19          Buchanan argues that she satisfied the cause prong "because legislation regarding domestic violence consideration in sentencing had not been enacted at the time [her earlier] petitions were filed." She relies on statutory amendments contained in Public Act 99-384, which became effective on January 1, 2016. Public Act 99-384 amended the list of mitigating factors that courts should give weight in favor of withholding or minimizing a prison sentence to include that "[a]t the time

of the offense, the defendant is or had been the victim of domestic violence and the effects of the domestic violence tended to excuse or justify the defendant's criminal conduct." 730 ILCS 5/5-5-3.1(a)(15) (West 2016). The legislature also allowed defendants who failed to present evidence of domestic violence to petition for resentencing in some circumstances. 735 ILCS 5/2-1401(b-5) (West 2016). Buchanan asserts that, before these amendments, she "was not allowed to present evidence of her domestic violence as statutory mitigation" and "her status as a domestic abuse victim [was not] considered when her life sentence was imposed." Citing *People v. Davis*, 2014 IL 115595, ¶ 42, Buchanan asserts that developments in the law can provide cause for the filing of a successive postconviction petition.

¶ 20    On appeal, Buchanan asserts that, as applied to her, the 45-year statutory minimum sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). That provision states, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id*. A sentence violates the proportionate penalties clause if it is "degrading, cruel, 'or so wholly disproportionate to the offense that it shocks the moral sense of the community.' " *People v. Thornton*, 2022 IL App (1st) 170677-B, ¶ 33. An as-applied proportionate penalties challenge is "dependent on the specific facts and circumstances of the person raising the challenge." *People v. Harris*, 2018 IL 121932, ¶ 39.

¶ 21    Buchanan claims that her status as a victim of domestic violence, considered along with other mitigating factors, renders her sentence disproportionate. She notes that she has no felony criminal history apart from this offense, she is currently 69 years old, and she suffers from asthma and other health issues, which she states make her vulnerable during the ongoing COVID-19 pandemic. Buchanan further argues that the law has evolved to acknowledge the effect of domestic

abuse in criminal conduct of victims, especially through the concept of "battered woman syndrome." That is, the law has come to understand that victims of domestic abuse may perceive imminent harm and the need to meet that threat with force in situations where others would not perceive such a threat. What is more, she points out that considerations of domestic abuse are not only relevant and admissible to support claims of self-defense against an abuser, but the effect of abuse so permeates the life of a victim that it is recognized as a mitigating factor in offenses committed against others. In accord with this trend, Buchanan posits that the amendments of Public Act 99-384 indicate an "evolving legislative attitude of leniency toward domestic violence victims" and evince an acknowledgment that domestic abuse affects criminal conduct, lessening the culpability of such offenders. When these factors are properly considered, according to Buchanan, her *de facto* life sentence—a prison term she is unlikely to survive—is cruel and shocks the moral sense of the community.

¶ 22 The State argues that Buchanan has improperly raised a proportionate penalties claim for the first time on appeal. Buchanan counters that her allegations were sufficient to raise the issue even if she did not expressly articulate it as such before the trial court. We need not resolve this question since we find that Buchanan cannot establish cause for failing to assert an as-applied proportionate penalties claim in earlier proceedings.

¶ 23 In some circumstances, developments in the law can provide cause for the filing of a successive postconviction petition. In *Davis*, our supreme court found that the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S 460 (2012) was such a development as the *Miller* decision announced a new substantive rule regarding how the eighth amendment applied to juveniles sentenced to mandatory prison terms of natural life without parole. 2014 IL 115595, ¶ 39. Our supreme court reasoned that the rule announced in *Miller* applied retroactively and,

therefore, constituted cause for petitioners seeking to file successive petitions based on the rule. *Id.* ¶¶ 39, 42. Buchanan, however, does not assert a claim based on a new substantive rule of constitutional law. Rather, the constitutional provision she relies on, the proportionate penalties clause, existed long before Buchanan filed her direct appeal in 2007 and her initial postconviction petition in 2010. What is more, our supreme court had previously recognized that the provision may be invoked to deviate from the sentence required by statute when the defendant's particular circumstances render the mandatory sentence disproportionate. *People v. Miller*, 202 Ill. 2d 328, 341 (2002). Nothing prevented Buchanan from asserting an as-applied proportionate penalties claim in earlier proceedings to argue that her sentence should be less than the mandatory minimum.

¶ 24 Similarly, the evolving legal recognition of the mitigating effect of domestic abuse long predated Buchanan's initial proceedings as well. Indeed, the authority she cites in her brief regarding "battered woman syndrome" are cases and scholarly articles published in the 1980s and 1990s. Buchanan's domestic abuse was noted in her presentence investigation report. Thus, an argument that Buchanan's domestic abuse mitigated against her 45-year sentence was factually and legally available in earlier proceedings. Public Act 99-384's amendment to a sentencing statute has no bearing on Buchanan's ability to have raised her claim earlier. Public Act 99-384 added domestic abuse to the list of mitigating factors courts must consider, but that list has never been exclusive, and courts were not precluded from considering domestic abuse in mitigation. See *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 49 (observing that the statutorily enumerated mitigating and aggravating "factors are not an exclusive listing that prohibits a court from considering any other relevant sentencing factor."). Insofar as the amendment reflects an evolving legal recognition of the mitigating effect of domestic abuse, it merely added additional support for

a proportionate penalties claim that could have been raised earlier, which does not constitute cause. *People v. Peacock*, 2022 IL App (1st) 170308-B, ¶ 22.

¶ 25                                III. CONCLUSION

¶ 26        For these reasons, we find that Buchanan has failed to establish cause to permit the filing of a successive postconviction petition. Accordingly, we affirm the judgment of the circuit court.

¶ 27        Affirmed.